**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ZAPFRAUD, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-1687-CFC-CJB |
| | ) | |
| BARRACUDA NETWORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

Pending before the Court in this patent infringement action is Defendant Barracuda Networks, Inc.'s ("Defendant" or "Barracuda") motion seeking a transfer of venue to the United States District Court for the Northern District of California ("Northern District of California"), which was filed pursuant to 28 U.S.C. § 1404(a) (the "Motion"). (D.I. 21) Plaintiff ZapFraud, Inc. ("Plaintiff" or "ZapFraud") opposes the Motion. For the reasons set forth below, Barracuda's Motion is DENIED.

**I.      BACKGROUND**

Below, the Court provides some factual and procedural background on the parties and their legal dispute. Additional relevant facts will be set out as necessary in Section II below.

**A.      The Parties**

Plaintiff is a Delaware corporation with its principal place of business in Portola Valley, California. (D.I. 37 at ¶ 4) Plaintiff is a "technology company founded by leading e[-]mail security researcher Dr. Bjorn Markus Jakobsson." (*Id.* at ¶ 1) Plaintiff owns the two patents-in-suit, United States Patent Nos. 10,277,628 (the "'628 patent") and 10,609,073 (the "'073 patent"). (*Id.* at ¶ 3) Both the '628 patent and the '073 patent are entitled "Detecting Phishing Attempts";

they both relate to methods for "detecting fraud or phishing attempts in email communications." (*Id.* at ¶¶ 17, 19, 37, 39)

Defendant is a Delaware corporation with its principal place of business in Campbell, California. (*Id.* at ¶ 5) Defendant is alleged to directly infringe (by making, using, selling, offering to sell and/or importing), to induce infringement of, and to contributorily infringe the patents-in-suit, through, *inter alia*, its e-mail security products and services, particularly Barracuda Sentinel (the "accused product"). (*Id.* at ¶¶ 6, 24, 27-32, 44-50)

B. **Procedural Background**

The instant case is one of five filed by Plaintiff in this district on September 10, 2019, in which it brought related claims of patent infringement. (D.I. 1) Three of those other four actions are still pending: *ZapFraud, Inc. v. FireEye, Inc.*, Civil Action No. 19-1688-CFC ("*FireEye*"); *ZapFraud, Inc. v. Mimecast North America, Inc. et al.*, Civil Action No. 19-1690-CFC ("*Mimecast*"); and *ZapFraud, Inc. v. Proofpoint, Inc.*, Civil Action No. 19-1691-CFC ("*Proofpoint*"). The fifth, *ZapFraud, Inc. v. Fortinet, Inc.* Civil Action No. 19-1689-CFC ("*Fortinet*"), was dismissed by stipulation in December 2019. *Fortinet*, D.I. 13.

Barracuda filed the instant Motion on December 27, 2019. (D.I. 21) On December 30, 2019, United States District Judge Colm F. Connolly referred the Motion to the Court. (D.I. 25; *see also* D.I. 20)[1] Briefing was completed on the instant Motion on January 17, 2020. (D.I. 30)[2]

---

[1] Also pending before the Court in this action is Barracuda's amended motion to dismiss for failure to state a claim, (D.I. 39), in which Barracuda asks the Court to dismiss ZapFraud's claims for indirect and willful infringement. In the other three pending actions, there are various motions also pending before the Court; among them are Defendant FireEye, Inc.'s motion to transfer the case against it to the Northern District of California, *FireEye*, D.I. 15, and Defendant Proofpoint, Inc.'s motion to transfer its case to the Northern District of California, *Proofpoint*, D.I. 19.

[2] When Barracuda filed the instant Motion, Plaintiff's then-operative First Amended Complaint only asserted infringement of the '628 patent. (D.I. 9) While the Motion

## II.     DISCUSSION

### A.     Legal Standard

Section 1404(a) of Title 28 provides the statutory basis for a transfer inquiry.  It provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).

The party seeking a transfer has the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer[.]"  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (citation omitted); *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).[3]  That burden is a heavy one:  "unless the balance of convenience of the parties is *strongly in favor* of [the] defendant, the plaintiff's choice of forum should prevail."  *Shutte*, 431 F.2d at 25 (internal quotation marks and citation omitted) (emphasis added).

The first step in the transfer analysis is to determine whether this action could have been brought in the proposed transferee district.  *David & Lily Penn, Inc. v. TruckPro, LLC*, Civ. No. 18-1681-LPS, 2019 WL 4671158, at *1 (D. Del. Sept. 25, 2019).  If the action could have been brought in the proposed transferee district, the Court must then balance the appropriate considerations to determine whether, in the interests of justice, the transfer request should be granted.  *Id.* at *2.  The United States Court of Appeals for the Third Circuit has observed that in

---

was pending, Plaintiff filed the operative Second Amended Complaint, in which it asserts infringement of the '628 patent and the '703 patent.  (D.I. 37)  No party has suggested that the filing of the Second Amended Complaint had any impact on the parties' arguments for or against transfer; thus, the Court understands those arguments to apply just as well to the '703 patent-related claims as they would to the '628 patent-related claims.

[3]     In analyzing a motion to transfer venue in a patent case, it is the law of the regional circuit that applies.  *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1331 (Fed. Cir. 2011).

performing this balancing act, a district court should analyze "all relevant factors"; however, the Third Circuit has identified a set of private interest and public interest factors that are appropriate to account for in this analysis (the "*Jumara* factors"). *Jumara*, 55 F.3d at 879 (internal quotation marks and citation omitted). The private interest factors to consider include:

> [1] [The] plaintiff's forum preference as manifested in the original choice, [2] the defendant's preference, [3] whether the claim arose elsewhere, [4] the convenience of the parties as indicated by their relative physical and financial condition, [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, . . . and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)[.]

*Id.* (citations omitted). The public interest factors to consider include:

> [1] [T]he enforceability of the judgment, [2] practical considerations that could make the trial easy, expeditious, or inexpensive, [3] the relative administrative difficulty in the two fora resulting from court congestion, [4] the local interest in deciding local controversies at home, [5] the public policies of the fora, . . . and [6] the familiarity of the trial judge with the applicable state law in diversity cases[.]

*Id.* at 879-80 (citations omitted).

### B. Appropriateness of the Transferee Venue

The first step in the transfer analysis is to determine whether this action could have been brought in the proposed transferee venue. Here, there is no dispute that this action could have been properly brought in the Northern District of California. (D.I. 22 at 6-7; D.I. 27 at 4)

### C. Application of the *Jumara* Factors

#### 1. Private Interest Factors

##### a. Plaintiff's choice of forum

When analyzing the first *Jumara* private interest factor—the "plaintiff's forum preference as manifested in the original choice"—if the plaintiff articulates rational and legitimate reasons

4

for filing in this district, this factor will weigh against transfer. *Pragmatus AV, LLC v. Yahoo! Inc.*, Civil Action No. 11-902-LPS-CJB, 2012 WL 4889438, at *4 (D. Del. Oct. 15, 2012) (citation omitted), *report and recommendation adopted by* 2013 WL 174499 (D. Del. Jan. 16, 2013); *see also Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 753-54 (D. Del. 2012). However, if the plaintiff's choice is made for an improper reason—such as where it is arbitrary, irrational, or selected to impede the efficient and convenient progress of a case—it will likely weigh in favor of transfer. *Pragmatus*, 2012 WL 4889438, at *4.

Plaintiff states multiple reasons why it brought this case in the District of Delaware, including that both it and its adversary Barracuda are incorporated in Delaware. (D.I. 27 at 6) It is rationale and legitimate for an entity to file suit in the state where it makes its corporate home, *see Tessera, Inc. v. Broadcom Corp.*, Civil Action No. 16-379-LPS[-]CJB, Civil Action No. 16-380-LPS-CJB, 2017 WL 1065865, at *4 (D. Del. Mar. 21, 2017) (citing cases), just as it is for the entity to sue its adversary in the state of the adversary's incorporation (i.e., where personal jurisdiction over the defendant and proper venue are assured), *see, e.g.*, *David & Lily Penn, Inc.*, 2019 WL 4671158, at *2; *TSMC Tech., Inc. v. Zond, LLC*, Civil Action No. 14-721-LPS-CJB, 2014 WL 7251188, at *15 (D. Del. Dec. 19, 2014) (citing cases), *report and recommendation adopted by* 2015 WL 328334 (D. Del. Jan. 26, 2015).[4]

---

[4] Barracuda asserts that because Plaintiff is not physically located in Delaware (i.e., that Delaware is not its "home turf"), Plaintiff's choice of forum should receive lesser weight. (D.I. 22 at 7-8) For reasons the Court has previously explained, an analysis as to whether Delaware is Plaintiff's "home turf" is unnecessary here, as it has no independent significance as to this first *Jumara* private interest factor. *Tessera, Inc.*, 2017 WL 1065865, at *4 n.6; *Pragmatus*, 2012 WL 4889438, at *5; *see also Applied Predictive Techs., Inc. v. MarketDial, Inc.*, Civil Action No. 18-963-CFC, 2019 WL 2745724, at *3 (D. Del. July 1, 2019).

Because there are legitimate reasons for Plaintiff having filed this case in this Court, this factor weighs against transfer.

### b.     Defendant's forum preference

As for the second private interest factor—the defendant's forum preference—Barracuda prefers to litigate in the Northern District of California. (D.I. 22 at 9; *see also id.* at 1) In analyzing this factor, the Court has similarly "tended to examine whether the defendant can articulate rational, legitimate reasons to support that preference." *Pragmatus*, 2012 WL 4889438, at *6. Here, Barracuda asserts that it wishes to litigate in the proposed transferee district because its principal place of business is there and "all of [its] likely key witnesses and relevant documents are located" there. (D.I. 22 at 9) That makes rational sense too and so this factor supports transfer.[5] *See, e.g.*, *Tessera, Inc.*, 2017 WL 1065865, at *5 (citing cases).

### c.     Whether the claims arose elsewhere

The third private interest *Jumara* factor asks "whether the claim arose elsewhere." As to claims for patent infringement, as a matter of law, such claims arise "wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *McRo, Inc. v. Activision Blizzard, Inc.*, Civil Action No. 12-1508-LPS-CJB, 2013 WL 6571618, at *5 (D. Del. Dec. 13, 2013) (certain internal quotation marks and citations omitted), *report and recommendation adopted by* 2013 WL 6869866 (D. Del. Dec.

---

[5] Plaintiff suggests that in analyzing these private interest factors, the movant's choice of forum is automatically entitled to less weight than that given to a plaintiff's choice of forum. (D.I. 27 at 6-7) The Court disagrees, as it has previously explained why it cannot find any support for that proposition in governing Third Circuit case law. *See, e.g.*, *Elm 3DS Innovations LLC v. SK Hynix Inc.*, Civil Action No. 14-1432-LPS-CJB, 2015 WL 4967139, at *6 n.13 (D. Del. Aug. 20, 2015) (citing cases); *Pragmatus*, 2012 WL 4889438, at *7.

30, 2013). Nevertheless, as to this factor, this Court typically focuses on the location of the production, design and manufacture of the accused instrumentalities. *Id.* (citing cases).

On this score, Barracuda avers that "*significant* aspects of the accused product were designed and developed by Barracuda leadership in Campbell[, California]. Additionally, engineering builds and design of the accused product [are] also performed at Barracuda's Northern California locations, [i.e. Campbell, San Jose, and Fresno, California.]" (D.I. 24 at ¶¶ 4, 6 (emphasis added); *see also* D.I. 22 at 10; D.I. 30 at 4) Barracuda further avers that the "sales, marketing and financial reporting . . . including [those] activities with respect to the accused product" "are *managed* out of its Campbell location[.]" (D.I. 24 at ¶ 8 (emphasis added)) However, Barracuda's submitted declaration is vague or silent as to: (1) where the other "aspects" of the design and development of the accused product occurred; (2) where the accused product was/is actually commercially made/manufactured; or (3) where offers for sale of the accused product are made. This vagueness is particularly unhelpful here, as Barracuda has seven United States offices (along with many other offices around the world), and four of the United States offices (located in Michigan, Wisconsin, Georgia and Massachusetts) are located far closer to Delaware than they are to the proposed transferee district. (*Id.* at ¶ 4; D.I. 28, ex. 2) And the accused product is sold throughout the United States, including in this district and the proposed transferee district. (D.I. 24 at ¶ 22)

With more allegedly infringing acts likely having a larger connection to the proposed transferee district than to other districts, but with the real possibility that a good number of such acts occurred at various locations around the country, the Court finds this factor to weigh slightly in favor of transfer. *Cf. VSLI Tech. LLC v. Intel Corp.*, Civil Action No. 18-966-CFC, 2018 WL 5342650, at *6 (D. Del. Oct. 29, 2018) (concluding the same, where some of the research and

development efforts associated with the accused products took place in the proposed transferee district, but where some took place elsewhere, and where the accused products were marketed and sold throughout the United States).

### d.  Convenience of the parties as indicated by their relative physical and financial condition

In assessing the next private interest factor—"the convenience of the parties as indicated by their relative physical and financial condition"—this Court has traditionally examined a number of issues, including: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, C.A. No. 12-cv-139 (GMS), 2013 WL 3293611, at *4 (D. Del. June 28, 2013) (internal quotation marks and citations omitted).

Barracuda argues that the Northern District of California would be more convenient for it. (D.I. 22 at 11)  And the Court agrees that it would, as its principal place of business is located there, certain operations relating to the accused product are located there, and key documents and source code relevant to the accused product are found there. (D.I. 24 at ¶¶ 3, 6, 17-18) Moreover, Barracuda went to the trouble to lay out, in some significant detail, why four different identified high-level employees (all of whom it describes as "potential witnesses"), are the "most knowledgeable about the overall design, development, structure, function and operation of the accused product" and about the "sales, marketing and financials" as to that product. (*Id.* at ¶¶ 7-15)  Each of these four employees (who include the company's Chief Financial Officer, its Chief Technology Officer, its Senior Engineering Director for the accused product and a Vice President with responsibility for the product) are located in the proposed transferee district, (*id.*

8

at ¶¶ 12-15); Barracuda explains that "their time is particularly valuable to" it, that none of them regularly travel to Delaware and that "their unavailability while traveling to Delaware would have a materially negative impact on business operations[,]" (*id.* at ¶ 16). This is a much more detailed explanation of how a movant's employee witnesses could be inconvenienced by transfer than the Court typically receives in such cases.

This inconvenience argument is mitigated, however, by three other considerations. First, it is hard for Barracuda to argue that this district is a decidedly inconvenient litigation forum, since it is incorporated here. *See, e.g.*, *Contour IP Holding, LLC v. GoPro, Inc.*, Civil Action No. 15-1108-LPS-CJB, 2017 WL 3189005, at *10 (D. Del. July 6, 2017) (citing cases). Second, the amount of inconvenience that Barracuda's four identified employee witnesses would face via travel to Delaware is not likely to be large—particularly if this case does not result in a trial. *See, e.g.*, *id.*, *Human Genome Scis., Inc. v. Genentech, Inc.*, C.A. Nos. 11-082-LPS, 11-156-LPS, 11-328-LPS, 2011 WL 2911797, at *7 (D. Del. July 18, 2011). Third, Barracuda does not argue that it lacks the resources to litigate here, nor could it credibly do so, as it is a multinational corporation. (D.I. 28, ex. 2)

As for Plaintiff, it too is located in the Northern District of California, and so is Dr. Jakobsson, its founder and the sole inventor of the patents-in-suit. (D.I. 22 at 3, 13; D.I. 23 at ¶ 2; D.I. 37 at ¶¶ 1, 17, 37) In light of that, while Delaware (its corporate home) would be a convenient place to litigate, the proposed transferee district is certainly not *inconvenient*.

Ultimately, with Barracuda having done a particularly good job of explaining why a trial in Delaware might negatively impact a good number of its high-level executives (and why those executives might actually be trial witnesses), and with Plaintiff's witnesses also located in the proposed transferee district, the Court concludes that this factor should favor transfer. *Cf.*

*Tessera, Inc.*, 2017 WL 1065865, at *7 (concluding that this factor slightly favored transfer where "some uncertain number of possible employee witnesses" were located in the proposed transferee district, none were in Delaware, and the parties both had ample resources with which to litigate the case).

> e. **Convenience of the witnesses to the extent that they may actually be unavailable for trial in one of the fora**

The "convenience of the witnesses" is the next factor, "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Of particular concern here are non-party fact witnesses, especially those who may not appear of their own volition in the venue-at-issue and who could not be compelled to appear there by subpoena pursuant to Federal Rule of Civil Procedure 45. *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 568-69 (D. Del. 2001); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998).[6]

As to this factor, Barracuda points to a single non-party witness residing in the Northern District of California: William Mabry Tyson. (D.I. 22 at 3, 14 (citing *FireEye*, D.I. 17 at ¶ 6 ("Gratz Decl.")). Mr. Tyson is asserted to be a relevant prior artist, having authored a mailing list post titled "3 suggested rules regarding forged local addresses," which "describes a

---

[6] In *Jumara*, the Third Circuit made clear that in order for this factor to meaningfully favor the movant, the movant must come forward with some amount of specificity. This is evident from the wording of the factor itself, which notes that the witnesses' convenience should be considered "only to the extent that the witnesses may *actually be* unavailable for trial in one of the fora[.]" *Jumara*, 55 F.3d at 879 (emphasis added). And it is evident from the legal authority that the *Jumara* Court cited to in setting out this factor. *See Elm 3DS*, 2015 WL 4967139, at *8 (citing *Jumara*, 55 F.3d at 879). In light of this, in order for the movant to convincingly argue that this factor squarely favors transfer, the movant must provide specificity as to: (1) the particular witness to whom it is referring; (2) what that person's testimony might have to do with a trial in this case; and (3) what reason there is to think that the person will "actually be" unavailable for trial (as opposed to the proffer of a guess or speculation on that front). *See id.*

10

[detection] method that examines the sender of an e[-]mail by comparing the display name on incoming e[-]mail to a database of display name and e[-]mail address pairings." (Gratz Decl. at ¶ 6; *see also* D.I. 22 at 3) In light of the nature of the asserted claims in this case, the Court thinks it understands why Mr. Tyson is said to possess information about relevant prior art. (D.I. 37 at ¶¶ 27, 45; *see also* D.I. 30 at 7) However, and even assuming that it is likely that he will be a trial witness, Barracuda fails to put forward any evidence demonstrating that Mr. Tyson would "actually be unavailable" for trial.

With only one relevant third party fact witness at issue who is located within the subpoena power of the proposed transferee district, and with no evidence suggesting he will be unlikely to testify at trial in Delaware, at most this factor only slightly favors transfer. *See Tessera, Inc.*, 2017 WL 1065865, at *9; *Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 443 (D. Del. 2015).[7]

### f.    Location of relevant evidence

Next, the Court considers "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." "In patent infringement

---

[7] In the Argument section of its opening brief, when it came to this factor, Barracuda only made mention of Mr. Tyson as a relevant third-party witness. (D.I. 22 at 14) It its reply brief, as to this factor, Barracuda for the first time referred to the fact that the '628 patent was prosecuted by attorneys practicing in the Northern District of California. (D.I. 30 at 7) Barracuda had briefly mentioned those attorneys in the Statement of Facts section of its opening brief. But because it did not fairly present these witnesses as being relevant to this factor in the Argument section of that opening brief, the Court will not consider the argument it made about these witnesses in its reply brief. *Cf. Bos. Sci. Corp. v. Micro-Tech Endoscopy USA Inc.*, Civil Action No. 18-1869-CFC-CJB, 2020 WL 229993, at *8 n.6 (D. Del. Jan. 15, 2020) (noting that the Argument section of a party's opening brief "is the place where legal arguments supporting a motion are supposed to be located . . . [and] where a plaintiff is supposed to look . . . to know what it absolutely has to respond to in its answering brief") (citing cases), *report and recommendation adopted by* 2020 WL 564935 (D. Del. Feb. 5, 2020).

cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal quotation marks and citation omitted). Yet this factor is commonly given little weight, as technological advances have "shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded . . . and have lowered the cost of moving that information from one place to another." *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, No. 01-199-SLR, 2001 WL 1617186, at *3 (D. Del. Nov. 28, 2001) (internal quotation marks and citation omitted).

Barracuda asserts that most or all of its relevant records—including source code for the accused product[8]—are located in the proposed transferee district. (D.I. 22 at 15 (citing D.I. 24 at ¶ 17); D.I. 30 at 8-9) That said, there is no indication that these records could not be easily produced for trial in Delaware. This factor should only slightly favor transfer, and should not have a significant impact in the overall calculus. *Genedics, LLC v. Meta Co.*, Civil Action No. 17-1062-CJB, 2018 WL 417950, at *8 (D. Del. Jan. 12, 2018).

### 2. Public Interest Factors

The Court below addresses the public interest factors that are in dispute here.

#### a. Practical considerations that could make the trial easy, expeditious, or inexpensive

---

[8] To the extent that Barracuda argues that since its source code is located in the Northern District of California, this should unduly alter the calculus as to this factor, (D.I. 22 at 15; D.I. 30 at 8-9), the Court disagrees. Parties to patent litigation matters are often able, with some work and planning, to produce source code in relevant locations without undue difficulty. *See Good Tech. Corp. v. MobileIron, Inc.*, Civil Action No. 14-1308-LPS-CJB, 2015 WL 1458091, at *7 (D. Del. Mar. 27, 2015). There is no showing that this case is any different.

The Court first considers the "practical considerations" factor. As this is a "public interest" factor, it requires that "at least some attention [must] be paid to the *public* costs of litigation[.]" *Schubert v. Cree, Inc.*, Civil Action No. 12-922-GMS, 2013 WL 550192, at *5 (D. Del. Feb. 14, 2013) (emphasis in original).

The parties focus their arguments on the fact that Plaintiff filed four other cases in this District, all of which involve the same patents and three of which are still pending. (*See* D.I. 27 at 14-15; *see also* D.I. 30 at 9)[9] Of the four total remaining related cases, the Defendants in three have filed transfer motions; one case, the *Mimecast* case, will remain in this district no matter what happens with the transfer motions. Judicial economy counsels in favor of having one judge in one district oversee all related cases involving the same patent. *See Papst Licensing*, 126 F. Supp. 3d at 444; *Elm 3DS Innovations LLC v. SK Hynix Inc.*, Civil Action No. 14-1432-LPS-CJB, 2015 WL 4967139, at *10-11 (D. Del. Aug. 20, 2015). And at the time the Motion was filed, it could have reasonably been anticipated that some of these other related cases would continue on in this Court for some time (as they have here) and require the Court to expend resources on them. In light of this, the Court finds this factor to weigh against transfer. *See Elm 3DS*, 2015 WL 4967139, at *10-11.

### b. Local interests in deciding local controversies at home

In patent litigation, the local interest factor is typically neutral, as patent issues tend to raise controversies that are more properly viewed as national, not local, in scope. *Graphics*

---

[9] The Court rejects Barracuda's argument that witnesses and evidence located in the proposed transferee forum tip this factor in favor of transfer. (D.I. 22 at 16-17) It also rejects Plaintiff's argument that Barracuda's sales of the accused product in Delaware are relevant here. (D.I. 27 at 15-16) These facts have already been taken into account as relevant to other private interest *Jumara* factors, and the Court will not "double count" them here with respect to this public interest factor. *See Elm 3DS*, 2015 WL 4967139, at *11.

*Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 330 (D. Del. 2013). Nevertheless, if there is a showing that the case has outsized resonance to the citizens of one of the districts, that could cause this factor to meaningfully favor one of the parties. *See Genedics*, 2018 WL 417950, at *9 & n.7 (citing cases).

Here, in support of its Motion, Barracuda argues that "both parties and the majority of the activity that gave rise to the claim and that would be affected by a judgment are in the Northern District of California." (D.I. 22 at 18) It also asserts that Plaintiff's allegations "call into question the work and reputation of Barracuda's employees who are located in" the Northern District of California (though it provides little in the way of evidence to suggest that the outcome of this suit will actually harm anyone's "reputation"). (*Id.* at 18-19) Plaintiff rightly counters that Delaware also has an interest in adjudicating disputes between two companies incorporated here. *See Ultravision Techs., LLC v. RMG Networks Holding Corp.*, Civil Action No. 18-1333-CFC, 2019 WL 1985110, at *3 (D. Del. May 6, 2019) (*cited in* D.I. 27 at 17).

With both sides having something to say, but with neither side demonstrating that this case will significantly affect the public at large in either district, this factor is neutral. *See David & Lily Penn, Inc.*, 2019 WL 4671158, at *5.

### c. Public policies of the fora

As for the "public policies of the fora," our Court has noted that "the public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for resolution of business disputes." *Good Tech. Corp. v. MobileIron, Inc.*, Civil Action No. 14-1308-LPS-CJB, 2015 WL 1458091, at *10 (D. Del. Mar. 27, 2015) (internal quotation marks and citation omitted). Even Barracuda acknowledges that this factor weighs against transfer to some extent, (D.I. 22 at 19), and the Court agrees that it does weigh against transfer, *see Am. Axle & Mfg., Inc.*

*v. Neapco Holdings LLC*, Civil Action No. 15-1168-LPS–CJB, 2016 WL 8677211, at *12 (D. Del. Sept. 23, 2016).

### 3. Conclusion Regarding Impact of *Jumara* Factors

In sum, Plaintiff's "forum preference as manifested in the original choice," the "practical considerations" factor and the public policies of Delaware factor weigh squarely against transfer. On the other hand, Barracuda's forum preference and the convenience of the parties factor squarely favor transfer, while the "whether the claim arose elsewhere" factor, the convenience of the witnesses factor and the location of evidence factor weigh only slightly in favor of transfer. The other factors are neutral.

In the end, there are reasons why both districts would be understandable locations for this suit (one being where both sides are incorporated, the other where both sides have their principal places of business). And there are other reasons to both keep the case here or to transfer it to the proposed transferee forum. With the *Jumara* factors not "strongly" favoring transfer, the Court concludes that the Motion should be denied.

## III. CONCLUSION

For the reasons set out above, the Court orders that Defendant's Motion be DENIED.[10]

Dated: July 28, 2020

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[10] The Court also DENIES the parties' requests for oral argument. (D.I. 32; D.I. 43)